# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 2, 2012　　　　Decided March 29, 2013

No. 11-3035

UNITED STATES OF AMERICA,
APPELLEE

v.

TERRY DAVIS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00193-1)

*Allen H. Orenberg*, appointed by the court, argued the cause and filed the brief for appellant.

*Christopher Macchiaroli*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Chrisellen R. Kolb* and *Michael K. Atkinson*, Assistant U.S. Attorneys. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, KAVANAUGH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: After a jury convicted Terry Davis of multiple counts of bank fraud, he successfully appealed his convictions to a panel of this court, which vacated them on the ground that the district court had erred in admitting certain of his statements in evidence. Thereafter, Davis pled guilty to a single count of bank fraud and received a sentence of the time he had already served on the earlier convictions, plus five years of supervised release. He now contends that his term of supervised release should be calculated as having commenced when he was ordered released on his own recognizance pending his ultimately successful appeal. We disagree and conclude that Davis' term of supervised release did not commence until he was sentenced, on the charge to which he pled guilty, to time served plus five years of supervised release.

I

From 1999 to 2003, Terry Davis served as national treasurer of the Phi Beta Sigma fraternity. *United States v. Davis*, 596 F.3d 852, 854 (D.C. Cir. 2010). During that time, Davis used at least $50,000 of the fraternity's funds for his own benefit by periodically writing checks to cash, sometimes forging the signature of the fraternity's national president and sometimes representing to fraternity officials that the proceeds of the checks went to fund fraternity activities. Davis was indicted on federal charges in June 2006 and arrested the following month. In May 2007, a jury found him guilty on one count of first-degree fraud, one count of first-degree theft, and multiple counts of bank fraud in connection with his activities as treasurer. On August 7, 2007, the district court sentenced Davis to 51 months' imprisonment followed by five years of supervised release, Judgment at 1-4, *United States v. Davis*, No. 06-cr-193 (D.D.C., filed Aug. 20, 2007), and committed him to the custody of the Bureau of Prisons to serve his term, *id.* at 3.

Davis appealed his convictions. On December 4, 2009, immediately following oral argument, a panel of this court

ordered that Davis "be released forthwith pending resolution of this appeal, subject to the terms and conditions of pretrial release set by the district court in its order of July 12, 2006," the day of Davis' original arrest. Order, *United States v. Davis*, No. 07-3100 (D.C. Cir. Dec. 4, 2009). On December 17, the district court released Davis on his own recognizance, pursuant to a modified set of pretrial release conditions. Release on Conditions (Dec. 30, 2009) (J.A. 22). In February 2010, the circuit panel vacated the district court's judgment of conviction, finding that the district court erred in admitting statements Davis had made in compromise negotiations, in contravention of Federal Rule of Evidence 408, and remanded the case for further proceedings. *Davis*, 596 F.3d at 861. Thereafter, the district court set a retrial date and again slightly modified the conditions of Davis' pretrial release.

On November 8, 2010, the government filed a superseding information charging Davis with a single count of bank fraud in connection with his defrauding of Phi Beta Sigma. Davis pled guilty to the information later that month. On March 14, 2011, the district court sentenced him to the time he had served on his 2007 sentence before the district court ordered his release in December 2009, plus five years of supervised release. Davis has filed a timely appeal.

## II

Davis' sole contention is that the district court erred in setting March 14, 2011, the day the district court sentenced him on the charge to which he pled guilty, as the commencement date of his five-year term of supervised release. Davis Br. 7.[1]

---

[1] Although other parts of Davis' brief created some ambiguity as to when he thought the district court intended his supervised relief term to commence, at oral argument Davis made clear that he believes

The correct date, he maintains, is December 17, 2009, the day the district court (in response to the appellate panel's instruction) ordered his release pending resolution of his appeal from his original convictions. The 2009 date is dictated, he insists, by the text of 18 U.S.C. § 3624(e).

Davis acknowledges that he failed to object to the start date of his term of release in the district court. Oral Arg. Recording at 1:21-2:40. We therefore review his claim for plain error only. *See United States v. Simpson*, 430 F.3d 1177, 1183 (D.C. Cir. 2005). This standard of review has no consequence, however, because we discern no error at all.

In pertinent part, § 3624(e) states:

> Supervision after release. -- A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released . . . . *The term of supervised release commences on the day the person is released from imprisonment . . . .*

18 U.S.C. § 3624(e) (emphasis added). Focusing on the second (italicized) provision in the subsection, and contending that he was "released from imprisonment" on December 17, 2009, Davis maintains that the term of his supervised release commenced on that date. In context, however, it is clear that this provision of § 3624(e) offers Davis no relief.

---

the district court determined that it would commence on March 14, 2011. Oral Arg. Recording at 19:04-19:18. The government agrees that it is "very clear" the district court intended the term to begin on that date, *id.* at 17:30-17:46, as do we.

The provision that Davis cites is immediately preceded by a provision (also quoted above) that states: "A prisoner whose *sentence* includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during *the term imposed*, supervise the person released . . . ." *Id.* (emphases added). This first provision makes clear that the "supervised release" referred to in the second provision is a component of a particular sentence that was imposed on the prisoner. But the sentence that Davis challenges on this appeal -- more specifically, the supervised release term "include[d]" in that sentence -- did not exist on December 17, 2009. At that time, Davis was subject to a different sentence, which had been handed down in August 2007. Moreover, that sentence was vacated by this court in February 2010, and from then until March 2011, he was not subject to any sentence at all. It was not until March 14, 2011, that the sentence with the supervised release component that Davis challenges here was issued. Hence, the supervised release term could not have commenced in December 2009, more than a year before it was imposed.

Nor was Davis released in December 2009 to "supervised release" in the sense contemplated by § 3624(e). As we have said, the first provision of § 3624(e) indicates that the "release" it references is release by the Bureau of Prisons to the supervision of a probation officer for a term of supervision *following expiration* of a sentence's term of imprisonment.[2] But Davis was not released in December 2009 because his term of imprisonment had expired. Rather, he was released because this

---

[2] This is confirmed by the text of § 3624(a), the first subsection of § 3624. That subsection is entitled "Date of release" and states: "A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment . . . ." 18 U.S.C. § 3624(a).

court so ordered pending resolution of his appeal. Nor was he released "to the supervision of a probation officer," as contemplated by § 3624(e). Instead, he was required to report to the D.C. Pretrial Services Agency. *See* Release on Conditions (Dec. 30, 2009) (J.A. 22); Order (D.D.C. Aug. 17, 2010); *see also* Release on Conditions (July 12, 2006). Indeed, Davis was not released to the supervision of the Probation Office until he was sentenced on March 14, 2011. *See* Judgment at 3 (filed Mar. 25, 2011) (J.A. 114).

So what was the nature of Davis' December 2009 release if it was not "supervised release"? Davis was first ordered released by the district court, per this court's instruction, "pending resolution of [his] appeal" and "subject to the terms and conditions of pretrial release set by the district court in its order of July 12, 2006." Order, *United States v. Davis*, No. 07-3100 (D.C. Cir. Dec. 4, 2009). The district court continued (and modified) those earlier conditions pending a possible retrial or plea. *See* Release on Conditions (Dec. 30, 2009) (J.A. 22); Order (Aug. 17, 2010). In short, Davis was released "pending judicial proceedings," which is the subject (and title) of Chapter 207 of Title 18 of the United States Code, the Title of the Code that covers release pending trial and appeal. *See* 18 U.S.C. § 3141(a), (b). It is for that reason that he was required to report not to Probation but to Pretrial Services, the entity that is responsible for persons released under Chapter 207. *See* 18 U.S.C. § 3154(3). And in the end, it is also for that reason that the provisions of 18 U.S.C. § 3624(e) are not relevant to Davis' 2009 release pending resolution of his appeal. Section 3624(e) is not part of Chapter 207, but rather part of Chapter 229, which covers the subject of (and is entitled) "Postsentence Administration." As we have explained, Davis was not "postsentence" in December 2009. To the contrary, the sentence from which he now appeals had not yet begun.

Davis contends that his textual argument is supported by the Supreme Court's decision in *United States v. Johnson*, 529 U.S. 53 (2000), but the problem addressed in that case is different from the one at issue here. In *Johnson*, the question was whether a prisoner who had been imprisoned longer than he should have been could have that time credited to his supervised release term, reducing its length. Ruling that the text of 18 U.S.C. § 3624(e) controlled the question, the Court held that "a supervised release term does not commence until an individual 'is released from imprisonment.'" 529 U.S. at 57 (quoting 18 U.S.C. § 3624(e)). But holding that a supervised release term *does not* commence until release from imprisonment is not the same as saying that every release from imprisonment *does* commence a supervised release term. Moreover, the Court noted that its construction was confirmed by the first sentence of § 3624(e), which provides that supervised release does not come until the prisoner is "released by the Bureau of Prisons *to the supervision of a probation officer*." *Id.* (emphasis added). As we have noted above, Davis was not released to the supervision of a probation officer until he was sentenced on March 14, 2011.

Finally, Davis suggests that we should calculate his term of supervised release as commencing in December 2009 because the release conditions the court imposed on him at that time were "akin" to those included in the supervised release conditions of the sentence it imposed in March 2011. Davis Br. 10. In fact, the two sets of conditions are quite different, as the latter are materially more restrictive. *Compare* Release on Conditions (Dec. 30, 2009) (J.A. 22), *with* Judgment at 3-4 (filed Mar. 25, 2011) (J.A. 114-15). Nor are the objectives of the two kinds of release conditions congruent. The former are intended to assure that a defendant will appear at future judicial hearings and not commit a crime in the interim. *See* 18 U.S.C. § 3142 (b), (c). The latter are intended, among other things, to

ease a defendant's transition into the community and provide for rehabilitation. *See Johnson*, 529 U.S. at 59 (citing, inter alia, S. REP. NO. 98-225, at 124 (1983)); U.S. SENTENCING GUIDELINES MANUAL § 5D1.3; *accord United States v. Vallejo,* 69 F.3d 992, 994 (9th Cir. 1995).

But it would not matter even if the two sets of conditions were the same. Davis does not cite any statute that would cause his term of supervised release to commence earlier than the date he was sentenced merely because he had previously been subject to equivalent pretrial release conditions. As we have explained, the only statute that he does cite, 18 U.S.C. § 3624(e), does not apply to the kind of release to which Davis was subject from December 2009 to March 2011. And in the absence of a statute, we have no authority to change the date upon which his supervised release began. *Cf. Johnson*, 529 U.S. at 60.

## III

For the foregoing reasons, we conclude that Davis did not become a "prisoner whose sentence includes a term of supervised release after imprisonment," 18 U.S.C. § 3624(e), until March 14, 2011, the date the district court sentenced him to time served plus five years of supervised release. Accordingly, because his term of supervised release did not commence until that date, the judgment of the district court is

*Affirmed.*