**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANGELO EARL,
*Defendant-Appellant*.

No. 12-10169

D.C. No.
2:99-cr-00030-HDM-LRL-1

OPINION

On appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, Senior District Judge, presiding

Argued and Submitted
February 14, 2013—San Francisco, California

Filed September 5, 2013

Before: Stephen Reinhardt and Milan D. Smith, Jr., Circuit
Judges, and James G. Carr, Senior District Judge.[*]

Opinion by Judge Carr

---

[*] The Honorable James G. Carr, Senior District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming the district court's order revoking supervised release and imposing additional conditions on the defendant, the panel held that a defendant's term of supervised release does not begin when the Bureau of Prisons places him in home confinement as part of his federal sentence, and the district court therefore retained jurisdiction over the defendant's revocation hearing.

### COUNSEL

Jason F. Carr (argued), Alina M. Shell, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender, Office of the Federal Public Defender, Las Vegas, Nevada, for Defendant-Appellant.

Adam M. Flake (argued), Assistant United States Attorney; Robert L. Ellman, Appellate Chief; Daniel G. Bogden, United States Attorney; Office of the United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

CARR, Senior District Judge:

### I.  Background

Defendant-appellant, Angelo Earl, appeals the trial court's finding that he violated a condition of his supervised release. Defendant argues the trial court lacked jurisdiction to revoke his term of release. For the reasons discussed below, the trial court retained jurisdiction over defendant's revocation hearing. We therefore affirm the trial court's order revoking his supervised release and imposing additional conditions on defendant.

Defendant pled guilty to four drug offenses, including attempting to sell sixty-three grams of cocaine to an undercover police officer. On January 18, 2000, the trial court sentenced him to 121 months' imprisonment and five years' supervised release. Defendant officially began supervised release on June 10, 2007. Sometime before then, the Bureau of Prisons (BOP) had placed defendant at a halfway house. Defendant succeeded at the halfway house, and the BOP thereafter placed him in home confinement.

On February 9, 2012, the probation officer filed a petition seeking to revoke defendant's supervised release, alleging he violated two of his conditions of release. On February 28, 2012, the trial court held a revocation hearing, and defendant admitted that he violated one of the conditions of his release by associating with known felons. The trial court sentenced defendant to six months' imprisonment and two years' additional supervised release. According to its inmate locator,

the BOP released defendant from prison on August 25, 2012.**[1]**
Defendant brings this appeal.

## II. Discussion

Contrary to defendant's argument, the trial court retained jurisdiction to revoke defendant's term of supervised release because a prisoner's term of supervised release does not begin when he is on home confinement while still serving his federal sentence, because he remains in BOP's legal custody during that time. We need not, therefore, remand for an evidentiary hearing to address further defendant's argument.

This court reviews challenges to a trial court's subject matter jurisdiction de novo. *United States v. Powell*, 24 F.3d 28, 30 (9th Cir. 1994). A trial court only retains jurisdiction to revoke a term of supervised release during its pendency. *United States v. Vargas-Amaya*, 389 F.3d 901, 903 (9th Cir. 2004). 18 U.S.C. § 3624(c)(2) specifically authorizes the BOP to "place a prisoner in home confinement" for a limited period of time. If defendant's term of home confinement, as he argues, also qualified as his term of supervised release, it is possible the trial court did not retain jurisdiction because defendant's term of supervised release may have lapsed before the revocation petition was filed. The critical question, therefore, is whether home confinement may begin the running of a person's term of supervised release.

---

**[1]** Defendant's release does not render this appeal moot because a successful appeal would affect his current two-year term of supervised release. *See United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001) (appeal not moot because the defendant's success on appeal could alter the supervised release portion of his sentence).

18 U.S.C. § 3621 grants the BOP authority to determine where to place a prisoner:

> (a) Commitment to custody of Bureau of Prisons.–A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the [BOP] until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.
>
> (b) Place of imprisonment.–The [BOP] shall designate the place of the prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP], whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the [BOP] determines to be appropriate and suitable . . . .

18 U.S.C. § 3624(e) governs the conditions under which a person's supervised release may begin. That section states, in pertinent part:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of

> supervised release commences on the day the
> person is released from imprisonment . . . . A
> term of supervised release does not run during
> any period in which the person is imprisoned
> in connection with a conviction for a Federal,
> State, or local crime . . . .

The Supreme Court addressed this statutory language in *United States v. Johnson*, 529 U.S. 53 (2000). In *Johnson*, the defendant was convicted of several drug and firearms convictions. *Id*. at 55. An appellate court later declared two of his convictions invalid, and, as a result, Johnson had over-served his remaining sentences by two-and-a-half years. *Id*. Johnson moved the trial court to reduce his term of supervised release by the excess time he had served in prison while unlawfully incarcerated. *Id*.

The Supreme Court held that "a supervised release term does not commence until an individual is 'released from imprisonment.'" *Johnson*, 529 U.S. at 57 (quoting 18 U.S.C. § 3624(e)). Despite the fact that Johnson remained in prison beyond the period in which his supervised release should have run, the plain language of the statute requires actual release from imprisonment before a person may begin serving his term of supervised release. *Id*. at 60. In this context, the Supreme Court declared that:

> A term of supervised release comes "after
> imprisonment," once the prisoner is "released
> by the [BOP] to the supervision of a probation
> officer." Supervised release does not run

> while an individual remains in the custody of
> the [BOP].

*Johnson*, 529 U.S. at 57 (quoting 18 U.S.C. § 3624(e)).

In defendant's view, this court has interpreted § 3624(e) and *Johnson* with differing and conflicting results. Defendant relies on *United States v. Sullivan*, 504 F.3d 969 (9th Cir. 2007), for the proposition that the question of whether a person is released from "imprisonment" for supervised release purposes depends on the factual nature of the confinement. In *Sullivan*, this court held that Sullivan's transfer to a community pre-release center, following the completion of his federal sentence, began his period of supervised release. *Id*. at 973. This was so because "detention at a community center, where the defendant is not subject to the control of the [BOP], is not 'imprisonment' . . . ." *Id*. (citing *Reno v. Koray*, 515 U.S. 50, 59 (1995)). Therefore, Sullivan's term of supervised release began when the BOP released him to the pre-release center. *Id*. Contrary to defendant's argument, however, *Sullivan* does not mandate a fact-specific inquiry into the nature of the confinement to determine whether a person remains "imprisoned" under the statute if that individual has not yet served his entire federal sentence and therefore has not been released from BOP's legal custody in the first place.

Instead, this case is governed by *United States v. Miller*, 547 F.3d 1207, 1211 (9th Cir. 2008). In *Miller*, this court held that a person transferred to a county jail for a work-release program *while still serving his federal sentence* did not commence his term of supervised release when he was transferred. *Id*. at 1210. Because the prisoner remained in BOP's *legal* custody, even though he was housed elsewhere,

he had not been "released from imprisonment[,]" and his term of supervised release did not begin to run until he completed his federal sentence. *Id*. at 1212. We stated that, "[r]egardless of where the BOP elects to transfer a person, she or he remains under BOP custody until the prescribed term of 'imprisonment' expires." *Id.* at 1211.

Applying *Miller*, we hold that a defendant's term of supervised release does not begin when the BOP places him in home confinement as part of his federal sentence. When he was transferred to home confinement, defendant, like Miller, remained under BOP's legal custody.[2] The BOP controlled the terms of his home confinement and, under 18 U.S.C. § 3624(c)(2), it had explicit authority to do so. Defendant had not yet completed his federal term of imprisonment, and, regardless of where the BOP decided to place him, his term of supervised release could not begin until his prescribed term of imprisonment expired. *Miller*, 547 F.3d at 1211. Because defendant's release to home confinement did not commence his term of supervised release, defendant's five-year term of supervised release did not commence until June 10, 2007, and the revocation petition filed February 9, 2012, was timely. Thus, the trial court retained jurisdiction to revoke defendant's term of supervised release.

Defendant notes that the statute and cases present the following tension: when the BOP places a person in community confinement or home detention, he is no longer in prison. Thus he is not technically "imprisoned" in one sense of the word. However, the statutory language and precedent discussed above resolve this apparent tension. First,

---

[2] Defendant does not dispute that, while in home confinement, he was "serving the remainder of his sentence under BOP control and custody."

the statute specifically states that the prisoner must be released from BOP's legal custody in order to be "released from imprisonment":

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment . . . .

18 U.S.C. § 3624(e). Under the statute, a person is not "released" from imprisonment merely because he is physically allowed to leave the prison. Rather, the person must be legally "released by the [BOP] to the supervision of a probation officer." As the Supreme Court stated, "[s]upervised release does not run while an individual remains in the custody of the [BOP]." *Johnson*, 529 U.S. at 57. We therefore interpret the term "released" in the context of the statute to require not only release from imprisonment, but also release from the BOP's legal custody at the expiration of the prisoner's prescribed sentence.

Contrary to defendant's argument, *United States v. Turner*, 689 F.3d 1117 (9th Cir. 2012), does not support his position. In that case, Turner served his federal prison term for distributing child pornography, and the government then detained him civilly under the Adam Walsh Protection Act, 18 U.S.C. § 4248(a). *Id*. at 1119. Turner remained in civil detention for over four years pending his civil commitment hearing. *Id.* While in detention, Turner filed a motion to

terminate his supervised release on the basis that he served the term while in civil detention. *Id*. The trial court denied the motion and later released Turner, finding the government failed to prove he should be civilly detained. *Id*. This court held that the *civil* detention by BOP did not toll defendant's term of supervised release. *Turner*, 689 F.3d at 1120–21. Thus, Turner's term of supervised release began to run at the time he completed his sentence, although, due to the civil detention process, he was not physically released from imprisonment at that time. *Id*. at 1123–24.

Defendant overlooks the critical distinction the court made in *Turner*, 689 F.3d at 1124. Turner remained in custody due to a civil detention petition, and not in conjunction with a criminal sentence. *Id*. Turner completed his prison sentence and the BOP "released" him as a matter of law from its legal custody when that sentence ended. *Id*. The fact that the BOP then immediately remanded him to its physical custody as a civil detainee did not mean he was never released.[3] *Id.* Like a person on supervised release whom the BOP detains before trial pending a new criminal charge, Turner was not in BOP's physical custody in connection with a criminal conviction, and therefore had been "released from

---

[3] Judge M. Smith dissented from the court's decision in *Turner*, stating that, because the BOP did not physically release Turner from the prison, he could not be "released from imprisonment" under the statute. 689 F.3d at 1126 (M. Smith, J., dissenting). Even if the dissent's position were the law of our circuit, it would not alter the outcome of this case, because the dissent simply argued that physical release is a *necessary*—but not necessarily *sufficient*—condition to being legally released from imprisonment. *Id*. at 1128. The dissent stressed, as we emphasize here, "that supervised release does not begin while a person remains in the BOP's custody[,]" and only begins "once a person completes his lawful term of imprisonment." *Id*. at 1127–28 (citing *Johnson*, 529 U.S. at 57).

imprisonment" within the meaning of § 3624(e). *Id.* at 1124–25. Here, defendant, unlike Turner, had not completed his prison sentence when the BOP placed him in home confinement, so he was not released from imprisonment.

Nor does *Turner*'s discussion of the rule of lenity support defendant's argument. In *Turner*, the court applied the rule to the Adam Walsh Act civil detention statute when interpreted in connection with the supervised release tolling provision of 18 U.S.C. § 3624(e). *Turner*, 689 F.3d at 1125–26. The tolling provision precludes a term of supervised release from running when the person is "imprisoned in connection with a conviction" for another crime. 18 U.S.C. § 3624(e). The court stated that, "[i]n passing the Adam Walsh Act, Congress apparently did not affirmatively consider the effect of § 3624(e), the supervised release statute." *Turner*, 689 F.3d at 1125–26. Because the statutes, when read together, created "a grievous ambiguity or uncertainty" regarding whether Turner was imprisoned "in connection with a conviction for a" crime, the court applied the rule to support its holding that the statute should be interpreted in Turner's favor. *Id*. The court did not, as defendant suggests, hold the phrase "released from imprisonment" in 18 U.S.C. § 3624(e) ambiguous.

For the foregoing reasons, we affirm the trial court's order revoking defendant's term of supervised release and imposing additional terms.

**AFFIRMED.**